**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DR. RICH EMANUEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| vs. | ) | 2:07-cv-00819-WKW |
| | ) | |
| GEORGE C. WALLACE COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendant. | | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Adam M. Porter
Attorney for Plaintiff
State Bar. No. ASB-2472-P75A
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Telephone: (205) 322-8999
Facsimile: (205) 322-8915
Email: adamporter@earthlink.net

TABLE OF CONTENTS

Page No.

INTRODUCTION.................................................................................................. 1

STATEMENT OF FACTS..................................................................................... 1

     I.  RESPONSE TO DEFENDANT'S STATEMENT OF FACTS................... 1

     II.  EMANUEL'S ADDITIONAL FACTS....................................................... 8

ARGUMENT......................................................................................................... 12

     I.  EMANUEL HAS SUFFICIENT EVIDENCE OF PRETEXT..................... 12

          A.  The Thompson Phone Conversation.................................................. 13

          B.  Saving Money..................................................................................... 15

          C.  Ware Being a "Better Fit"................................................................... 15

CONCLUSION..................................................................................................... 17

Herein, plaintiff Dr. Rich Emanuel ("Emanuel") will first provide an overview of the claims in the case and the grounds for the motion for summary judgment filed by defendant George C. Wallace Community College ("GCWCC"), follow with a statement of facts, and conclude with legal argument.

## INTRODUCTION

Emanuel claims that GCWCC did not hire him for the position of Speech Instructor at its Eufaula campus because of his race and/or gender. His claim is brought under Title VII, 42 U.S.C. § 2000e *et seq*. Emanuel pled both disparate treatment and disparate impact theories for his claim.

In its motion for summary judgment, GCWCC first argues that Emanuel has no claim under the theory of disparate impact. Emanuel no longer pursues this theory. Under the disparate treatment theory, GCWCC concedes that Emanuel has a *prima facie* circumstantial evidence case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and progeny and argues only that Emanuel cannot establish that its articulated reason is pretextual. As is set forth below, GCWCC's assertions are incorrect and it is not entitled to summary judgment.

## STATEMENT OF FACTS

Emanuel will first respond to GCWCC's statement of facts, followed by Emanuel's statement of additional facts.

### I. RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

Responses are broken down into the paragraphs set forth by GCWCC. Admitted facts are admitted for summary judgment only.

1. Admitted.

2. Admitted.

3. Admitted, with caveat that the Court decree in *Shuford, et al. v. Alabama State Board of Education, et al.*, Civil Action No. 89-T-196-N and related cases expired in 2005 and was not in effect at the time of the hiring decision in this case. (Young Depo. 35:4-5; 36:5-8) The resulting Guidelines GCWCC refers to had not been adopted at the time of the hiring decision involved in this case, but Young thought that *Shuford* still prevailed. (Young Depo. 36:9-37:2)

4. Admitted, with caveat set forth above.

5. Admitted, with caveat set forth above.

6. Admitted.

7. Admitted these are accurate quotes.

8. Admitted these are accurate quotes.

9. Admitted these are accurate quotes, with caveat again that the *Shuford* Decree had expired at the time of the hiring decision in this case.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted that this is one aspect to Emanuel's claim of discrimination.

14. Disputed that Emanuel "attack[s]" the Uniform Guidelines and the *Shuford* Consent Decree; nothing in the cited passage or elsewhere supports this characterization. Admitted that Emanuel testified that the Decrees provide latitude for colleges to not achieve the goals. (Emanuel

Depo. 90:11-18).[1] Admitted that Young testified that the goals set forth in the *Shuford* Decree are not quotas. However, Young also testified that that Department of Postsecondary Education "urge[s]" the colleges to meet the goals and monitors their progress and that she feels an obligation to meet them. (Young Depo. 26:9-27:8; 31:12-22)

15. Admitted that Young testified as to this. However, she also testified as to the "urging" that the goals be met and her obligation to do so, as set forth above.

16. Admitted that Young testified as to this. Disputed that race or sex played no role in her decision in this case, as set forth in response to GCWCC's factual assertions related to the facts of this case in particular and in Emanuel's additional facts set forth below.

17. Admitted, with reiterated caveat that the *Shuford* Decree was expired at the time of the decision in this case.

18. Admitted, but this is not something on which Emanuel relies in response to this motion.

19. Admitted that Ware met the minimum qualification of having a Master's degree but not all preferred qualifications; that Emanuel met the minimum qualification and all preferred qualifications; and that Emanuel had attained a higher educational degree (doctorate) than Ware and had more extensive teaching experience. It is disputed that Young truly based her selection of Ware on Young's now-asserted opinion that Ware was a more appropriate fit for the job because it was better suited to an instructor who had experience as a graduate from the two year college system, had taught part-time at a similar community college for a year, and could relate more directly to the

---

[1] Emanuel's references to deposition testimony are to page and line separated by colon. For example, reference to "Young Depo. 13:2-5" refers to page 13 of that deposition from line two through line five. Reference to "Young Depo. 13:2-14:5" refers to page 13 of that deposition from line two to page 14 through line five.)

3

students due to having taught in a rural area.[2] In support of this dispute, Emanuel would direct the Court to his evidence below regarding the disbelievability of these assertions, as well as Young's complete failure to mention these reasons at any point prior to her deposition in this case– including her state-required "Statement for the Search File" (Ex. 9 to Young Depo.) giving her explanation of reasons for her decision at the time of her decision or in her signed response to the EEOC charge preceding this case (Ex. 17 to Young Depo.). Further, as to the assertion that Ware's having taught at a community college for one year part-time made her a better candidate because she could "better relate to the students," Young agreed that teaching for many years at a community college (as Emanuel did) would give one a sense of the way things should be done there. (Young Depo. 150:20-151: 3) In fact, Young stated she felt that Ware's experience with two-year college students at Jeff State was a positive but agreed that such experience could be obtained from teaching at other two-year colleges. (Young Depo. 98:3-99:5)

20. Admitted that Young did not have these documents at her disposal during her interview of the applicants, but she did before she made her decision.[3] (Young Depo. 69: 12-16) Admitted that Young had the complete packets on all applicants with documents supplied by GCWCC and that Young reviewed these documents before she conducted her interviews. (Young Depo. 87:5-88:10)

---

[2] As for the claim about Ware coming from a "rural" area, Young actually testified that she liked the fact that Ware was from the Dothan area. (Young Depo. 139:19-20) However, the position called for teaching at the Eufaula campus, not Dothan. (Young Depo. 152:21-153:23)

[3] Emanuel was rated highest of the three final candidates by the search committee. (Ex. 8 to Young Depo; Young Depo. 70:16-18)

4

21. Though it is not believed that GCWCC is suggesting that Young did not interview the finalists, this passage could be read that way. Young did interview the three finalists by phone. (Young Depo. 90:22-91:13) The remainder is admitted.

22. Disputed that this alleged conversation took place prior to Young's selection of Ware. Young's final testimony in her deposition was that she could not say when this conversation with Thompson took place. Later in her deposition (after the passages cited by GCWCC), Emanuel's counsel questioned her about Thompson's affidavit (Ex. 18 to Young Depo.) that has been submitted by GCWCC. That colloquy is as follows:

> Q: His [Thompson's] last sentence is, "From our conversation, I was left with the impression that she [Young] had concluded that Dr. Emanuel would have been a problem if hired."
>
> A: Yeah. I don't, I don't think that, I don't think that we were in the, I think it was before we had, had made a decision, but like I say, <u>I can't remember when it was</u>.
>
> Q: So it may have been after you made the decision?
>
> A: I don't think so.
>
> Q: But you're not sure?
>
> A: I'm not sure.
>
> Q: Well, then if you had the conversation with him after the decision was made, it couldn't have had any effect on your decision, could it?
>
> A: No.
>
> Q: And it's possible that you didn't have the conversation before the decision was made, right?
>
> A: I believe the conversation was before the decision was made.
>
> Q: But you don't know for sure?

5

A:     I don't know for sure.

(Young Depo. 189:10-190:11) (underlining added)

There is, therefore, no reliable evidence that this alleged conversation took place before Young made the decision to select Ware.[4] Consequently, GCWCC"S contention regarding it should be stricken.

23. As stated above, it is disputed that this conversation took place prior to Young's decision to hire Ware as there is no reliable evidence to support the assertion.

24. As stated above, it is disputed that this conversation took place prior to Young's decision to hire Ware as there is no reliable evidence to support the assertion.

25. Disputed and irrelevant.  Disputed as follows: Emanuel was not terminated; there was a claim against him that he disputed (and still disputes), which was stipulated by Enterprise to be "doubtful" in nature, so he agreed to leave Enterprise to go to a job at his alma mater that he had previously been offered.  (Emanuel Depo. 27: 15-19; 47:23-48:9; 174:13-17; Ex. 8 to Emanuel Depo., p. 4)   Further, this is irrelevant.  Not only did Emanuel not know about the extent of the allegations and also never receive the documents from Enterprise until GCWCC subpoenaed them in this case (Emanuel Depo. 34:14-35:9), Young never knew anything about these allegations until

---

[4] Young's affidavit filed with GCWCC's motion asserting that she now knows that the conversation took place before the decision was made is due to be stricken because it is inconsistent with her prior deposition testimony that she does *not* know when it occurred. *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  Further, Thompson's affidavit also does not assert that the conversation took place prior to the decision being made.

Emanuel was deposed in this case.[5] (Young Depo. 206:10-207:10; 214:11-14) Because Young had no knowledge of the matter, it is irrelevant. *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061-62 (11th Cir.1994); (an employer may not articulate a reason on which it did not actually rely); *Walker v. Mortham,* 158 F.3d 1177, 1181, n. 8 (11th Cir. 1998) (same).

26. As stated above, it is disputed that this conversation took place prior to Young's decision to hire Ware as there is no reliable evidence to support the assertion. Further, GCWCC may not rely on it because Young knew nothing of the substance of it until Emanuel was deposed, well after the fact.

27. Disputed and irrelevant as set forth in response to No. 25 above.

28. Disputed and irrelevant as to the "disturbing phone call" from Thompson. *See* response to Nos. 22 and 25 above. Further disputed as to the remainder. *See* Emanuel's evidence below regarding Young's failure to have ever mentioned this before.

29. Admitted that Young testified as to this. Disputed that this is what actually motivated her. *See* Emanuel's disputatious evidence above regarding the lack of evidence of the asserted Thompson phone call occurring prior to the hiring decision and evidence below regarding the remainder of the assertions. Further, as to the alleged preference of a master's degree over a doctorate, Young testified that she did not feel that Ware's having a master's degree was preferable to Emanuel's having a doctorate. (Young Depo. 155:15-156: 13) As to the claim that Ware was

---

[5]In raising the argument that Young did not know about this, Emanuel would point out that he was not hiding anything; he himself was never provided the substance of the claims by Enterprise. (Emanuel Depo. 35:15-36:23; 42:5-43:14) In fact, Emanuel filed a complaint with the United States Department of Education regarding the matter. (Emanuel Depo. 49:13-51:6)

from Dothan, the position at issue was for GCWCC's Eufaula campus, not Dothan. (Young Depo. 13:17-20)

30.  Disputed that this alleged conversation took place before Young made the hiring decision.  Neither Thompson nor Young have established this.  *See* No. 22 above.

31.  Admitted.

32.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

33.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

34.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

35.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

36.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

37.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

38.  Admitted that Emanuel testified to this but disputed that this is all the evidence he has. *See* Emanuel's responses to GCWCC's asserted facts and Emanuel's evidence set forth below.

39.  Irrelevant; Emanuel does not rely on these assertions in response to this motion.

40.  Admitted that Ware met the minimum qualification of having a Master's degree.

## II. PLAINTIFF'S ADDITIONAL FACTS

The following facts are believed to be undisputed by GCWCC.

1. Emanuel graduated from the University of Montevallo with a Bachelor of Science degree in Speech and Theater, where he was a member of various honor societies. (Emanuel Depo. 6:21-9:6; Ex. 1 to Emanuel Depo.)

2. Emanuel received a Master's Degree in Speech Communications from Auburn University in 1984. (Emanuel Depo. 10:5-14; Ex. 1 to Emanuel Depo.)

3. After receiving his Master's Degree, Emanuel taught in the Fine Arts Department at Tift College in Macon, Georgia from 1984 to 1986, where he served as Chair of the Department and Theater Director of the College and Community Theater. (Emanuel Depo. 10: 19-11:13; Ex. 1 to Emanuel Depo.)

4. Emanuel left Tift College to continue his education at Florida State University, where he received his Doctor of Philosophy degree in Communication Theory and Research in 1989. (Emanuel Depo. 11: 23-13:6; Ex. 1 to Emanuel Depo.)

5. Emanuel also taught Communications courses while pursuing his Ph.D. at Florida State. (Emanuel Depo. 13:7-14:9)

6. Upon receiving his Ph.D., Emanuel began teaching at Enterprise State Junior College in 1989, where he taught for ten years. (Emanuel Depo. 14: 10-15:1; Ex. 1 to Emanuel Depo.)

7. Emanuel then went back to his alma mater, the University of Montevallo, where he taught Communications from 1999 to 2002 as Associate Professor. (Emanuel Depo. 56:10-16; Ex. 1 to Emanuel Depo.)

8. Emanuel is now an Associate Professor of Communications at Alabama State University, where he has taught since 2002. (Emanuel Depo. 57:21-58:8)

9. Emanuel was interested in the position made the basis of this case because he would have made more money. (Emanuel Depo. 206:8-207:15)

10. The Southern Association of Colleges and Schools ("SACS") is an organization that accredits elementary, secondary and higher education institutions, including GCWCC, in eleven Southern states. (Young Depo. 105:7-22)

11. GCWCC is supposed to follow SACS' rules. (Young Depo. 105:23-106:5)

12. SACS' Comprehensive Standard 3.7.1 states: "When determining acceptable qualifications of its faculty, an institution gives primary consideration to the highest earned degree in the discipline." (Ex. 14 to Young Depo.)

13. Young stated that it would "possibly be correct" that trying to get the best person for the job would mean getting someone who possessed the preferred qualifications. (Young Depo. 101:21-102:5)

14. Young made the decision to select Ware on July 12. (Ex. 9 to Young Depo; Young Depo. 82:4-11)[6]

15. Ware had taught part-time at Jeff State Community College for one year. (Young Depo. 92:9-18; 96:5-10)

16. Young agreed that Ware did not meet two of the preferred qualifications. (Young Depo. 123:23-124: 11)

17. Ware did not have experience in producing and directing student drama activities. (Young Depo. 102:22-103: 15; 104:9-12)

18. Ware did not have experience in coaching student teams for speech and/or debate competitions. (Young Depo. 103:16-104: 4)

19. Young agreed that Emanuel possessed all the preferred qualifications. (Young Depo. 130:7-10)

---

[6]Young had the position description and compared the required and preferred qualifications stated therein with the applicants' applications and other documents prior to her interviews of them. (Young Depo. 88:11-23) She went back over the documents after conducting the interviews. (Young Depo. 119:22-120:2)

20. Young agreed that Emanuel was more qualified than Ware based on the required and preferred qualifications as stated in the job description. (Young Depo. 130:14-23)

21. Young agreed that she did not make any reference to the phone call from Thompson in her July 17 "Statement to the Search File," wherein she set forth her reasons for selecting Ware (Ex. 9 to Young Depo.), though the purpose of the statement was to provide a clear record of the reasons for her decision. (Young Depo. 178:17-20; 181:2-4)

22. Young also agreed that she did not put anything in the statement about saving money by hiring Ware over Emanuel. (Young Depo. 200:1-13)

23. Young participated in providing GCWCC's response to Emanuel's EEOC charge. (Young Depo. 183: 5-12)

24. Young conferred with GCWCC's lawyer regarding the response to the EEOC charge, provided factual information for it, and signed it. (Young Depo. 184:10-15; 185:2-10)

25. Young read over the response prior to signing it to make sure it was accurate. (Young Depo. 185: 14-16)

26. Young understood that GCWCC"s response to the EEOC charge was to "explain our position." (Young Depo. 191:7-14)

27. Young admits that her signed response to the EEOC charge is not accurate in that it fails to make reference to any phone call from Thompson. (Young Depo. 186:7-20)

28. Young also made no reference in the EEOC response about either of her claims that (1) Ware had qualifications that better met the needs of the institution or that (2) hiring Ware was preferable because it would have saved money. (Young Depo. 197: 23-198: 13)

29. Young testified that she made a conscious decision not to tell the EEOC about the asserted "saving money" reason because she did not feel like it was important. (Young Depo. 198:20-199:6)

## ARGUMENT

### I. EMANUEL HAS SUFFICIENT EVIDENCE OF PRETEXT

GCWCC does not dispute that Emanuel has a *prima facie* circumstantial evidence case of disparate treatment.[7] Rather, it argues that Emanuel cannot establish that its articulated reason for hiring Ware is pretextual.

Emanuel can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th 2005) (*quoting Burdine, supra.*, 450 U.S. at 256). Under the indirect method, demonstration that GCWCC's articulation could reasonably be believed to be false is sufficient to establish pretext unless "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000). In considering the presence of pretext, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Silvera v. Orange County Sch. Bd.,*

---

[7]As stated above, Emanuel limits his legal theory to disparate treatment.

12

244 F.3d 1253, 1258 (11th Cir. 2001), *cert. denied*, 534 U.S. 976, 122 S. Ct. 402, (2001). As is forth below, Emanuel has sufficient evidence of pretext.

Before addressing the specifics of GCWCC's articulation, Emanuel would emphasize to the Court the organizational backdrop to this decision. GCWCC was "urged" by its overseer, the Department of Postsecondary Education, to meet the *Shuford* Decree and then the subsequent Uniform Guidelines for hiring African-Americans and females (and in particular African-American females). Although Young avers that she never let the Decree or the Guidelines cause her to base an employment decision on race or gender, she admits that she had and has an obligation to try to meet these "goals." So, to view this case properly, one must keep in mind the effect of the Guidelines on Young and her acknowledged obligation to try to meet them.

Now, to address GCWCC's articulation. Its asserted reasons are: (1) the Thompson phone conversation; (2) Emanuel would have cost more; and (3) Ware was a "better fit" because she was from Dothan, her master's degree was preferable to Emanuel's doctoral degree, she had graduated from a two-year college, and her having "taught part-time at a similar community college for a year" was preferable.[8] These will be discussed in turn.

### A. The Thompson Phone Conversation

First, this reason is not due to be credited because GCWCC has not established that this conversation took place prior to the Young's hiring decision. Young's final testimony at deposition

---

[8] GCWCC also listed a reason in its argument that Ware exhibited "enthusiasm" for the job. (GCWCC Brief, p. 24) Emanuel would point out that Young stated that Emanuel "[p]robably" also had enthusiasm. (Young Depo. 172:18-20)

on the subject was that she could not remember when it occurred.[9]  Further, Thompson's affidavit does not state when the conversation occurred.

Second, Young failed to mention the reason in her "Statement to Search File" shortly after the decision.  She also failed to mention it in GCWCC's response to the EEOC charge preceding this case, which she admittedly participated in drafting, reviewing, and signing.  The Eleventh Circuit has held many times that changing an articulation in this manner is suggestive of pretext:

• In *Cleveland v. Home Shopping Network*, 369 F.3d 1189 (11th Cir. 2004), the trial court granted defendant a judgment as a matter of law after a jury found that it had terminated plaintiff because of her disability. The court found that plaintiff had established a *prima facie* case but not pretext.  On appeal, the Eleventh Circuit reversed, noting that the decision-maker, Concello, had given varying reasons for the decision to terminate: "[T]he shifting reasons allow the jury to question his credibility. Once Concello's credibility is damaged, the jury could infer that he did not fire Cleveland because of the infomercial, but rather because of her disability."  *Id.* at 1194.

• In *Hinson v. Clinch Co. Bd. of Ed.*, 231 F.3d 821 (11th Cir. 2000), the Eleventh Circuit reversed a grant of summary judgment, finding evidence of pretext where the decision-maker only raised complaints of plaintiff's job performance for the time in response to an EEOC charge.

• In *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999), the Eleventh Circuit reversed a grant of summary judgment where it found sufficient evidence of pretext

---

[9]As stated above, Young's subsequent affidavit, wherein she averred without explanation that she now remembers that the conversation took place prior to the decision, is due to be stricken because it is inconsistent with her prior deposition testimony.  *Van T. Junkins and Assoc., supra.*

14

based on differing reasons given in the decision-maker's deposition testimony and his affidavit. *Id*., at n. 7.

• Finally, in *Bechtel Const. Co. v. Sec. of Labor*, 50 F.3d 926, 935 (11th Cir. 1995), the Eleventh Circuit affirmed a ruling for the employee in a whistleblower case where the employer's "shifting explanations" from the Administrative Law Judge to the Court of Appeals regarding the basis for the employment decision were suggestive of pretext.

If this conversation had such an effect on Young (assuming it took place before the hiring decision), it is highly suspect that she would not have made some mention of it either in her "Statement to the Search File" or in the response to the EEOC charge she contributed to, reviewed, and signed. Rather, her raising of this asserted reason this late in the day suggests that it is contrived. As with the cases cited above, it is solid evidence of pretext.

### B. Saving Money

The same argument goes for this assertion. Young made no mention of this to her "Statement to the Search File" or in the response to the EEOC charge. Her failure to do so until now is evidence of pretext. Moreover, SACS' policy clearly states that "primary" consideration should have been given to the candidate with the most advanced degree. Consequently, Young should have given primary consideration to Emanuel's higher degree. It would also be a reasonable inference to find the failure to do so to be pretextual.

### C. Ware Being a "Better Fit"

Emanuel would first state that he means no disrespect to Ware in pointing out the fallaciousness of this assertion. She is obviously much less-experienced than Emanuel, which is no criticism of her. However, it is preposterous for Young to state that it actually served GCWCC and

15

its students better by choosing someone who did not meet all the preferred qualifications for the position and who had only one year of part-time teaching experience over someone who did have all the preferred qualifications (exceedingly so) and who had 20 years of teaching experience. Also, again SACS' policy states that "primary" consideration should have been given to the candidate with the most advanced degree.[10] It defies logic to assert that Ware was preferable for these reasons. Emanuel is mindful that courts do not second guess business decisions of employers. *Damon, supra,* at 1361. However, an articulated reason must be one that "might motivate a reasonable employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000). Where the asserted reason is spurious on its face, courts will pierce that veil of deference and hold employers accountable. *See, e.g., Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994) (where employer claimed that pregnant employee was fired for taking sick leave though it was permitted by company policy, "then the burden was on [the employer] to prove this unusual scenario.") In this case, where GCWCC actually has the temerity to argue that someone with vastly inferior credentials was a "better fit" to teach students at a public institution, it is downright specious and, like in *Byrd*, GCWCC should be sent to trial to let it prove that "unusual" assertion to a jury.

In sum, in this case GCWCC chose an admittedly and greatly inferior candidate who was an African-American female when it was urged by the Postsecondary Department of Education to do so. In doing so, GCWCC clearly passed over a much more qualified Caucasian mail. Emanuel has

---

[10]The following deposition testimony from Young is patently disingenuous and further evidences her attempt to skew the articulation toward Ware's inferior record. Young testified that having a doctorate does not necessarily make one a better teacher. (Young Depo. 113:14-115: 1) Granted, that could be true in some cases. However, when asked if she learned more when she got her doctorate herself, she replied, "Not necessarily." (Young Depo. 114: 17-19) When further asked what she did learn in getting her doctorate, she replied, "Not much." (Young Depo. 114:20-22)

16

provided ample evidence from which a reasonable person could find GCWCC's articulation pretextual.

## CONCLUSION

Based on the foregoing, GCWCC's motion for summary judgment is due to be denied.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
2301 Morris Avenue
Suite 102
Birmingham, Alabama 35203
(205) 322-8999

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Andrew W. Christman, Esq.  Gidiere, Hinton, Herndon & Christman  PO Box 4190 Montgomery, AL 36103-4190 and that there are no non-CM/ECF participants in this case.

s/ Adam M. Porter
Attorney for Plaintiff