IN THE UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DR. RICH EMANUEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV-07-819-WKW |
| | ) |
| GEORGE C. WALLACE | ) |
| COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY BRIEF TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the defendant, George C. Wallace Community College ("GCWCC"), and hereby files this brief in the above-styled case in reply to plaintiff's opposition to defendant's motion for summary judgment.

**LEGAL ARGUMENT**

**I. Defendant GCWCC proffered several legitimate, non-discriminatory reasons for not hiring Emanuel, and Emanuel has failed to provide sufficient evidence that these proffered reasons are merely pretextual. As such, GCWCC is entitled to summary judgment**.

Emanuel has failed to show that the legitimate, non-discriminatory reasons GCWCC proffered for not hiring him were pretextual. Since Emanuel has abandoned his claim of disparate impact,[1] the only issue remaining is whether Emanuel has produced

---

[1] Based on the plaintiff's statement that he is no longer pursuing the disparate impact theory appearing in Count I of the Complaint, the defendant's motion for summary judgment is uncontested as to that claim. (See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, p1) Therefore, summary judgment is due to be granted in favor of the defendant on plaintiff's claim of disparate impact.

sufficient evidence that a reasonable juror could view and determine that the non-discriminatory reasons proffered by GCWCC were merely pretextual. Because Emanuel has failed to produce such evidence, there is no genuine issue of material fact, and defendant GCWCC is entitled to summary judgment.

The only issue before the Court is whether the plaintiff has provided sufficient evidence to permit a reasonable fact finder to conclude that the reasons given by GCWCC were pretextual.[2] Eleventh Circuit precedent has clearly established a district court's role in determining whether a proffered non-discriminatory reason is legitimate or merely pretextual. "[F]ederal courts do not sit to second-guess the business judgment of employers . . . . [A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). It is not the role of the court to "sit as a super-personnel department that re-examines" the defendant's employment decisions. *See Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991). The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law." *See id.* at 1470. Federal courts are not in the business of judging whether employment decisions are

---

[2] Both parties agree that the plaintiff can establish a *prima facie* case of disparate treatment. According to the *McDonnell Douglas* framework, the burden then shifts to the employer (here GCWCC) to offer legitimate, non-discriminatory reasons for the employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). Once the employer articulates a legitimate, non-discriminatory reason, the plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were pretextual. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997).

2

prudent or fair. Instead, the sole concern is whether unlawful discriminatory animus motivates a challenged employment decision. *See Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1984).

GCWCC has proffered three independent and legitimate reasons for not hiring Emanuel, which Emanuel challenged in his Response to Defendant's Motion for Summary Judgment. Plaintiff has, at best, challenged the wisdom of GCWCC's employment decision and offered no evidence of pretext.

> **A.    GCWCC chose to not hire Emanuel, in part, based on a phone conversation between Drs. Thompson and Young, and the plaintiff has failed to produce any evidence that would support a finding that this explanation is not legitimate, but merely pretextual**.

Dr. Young, president of GCWCC, testified that Emanuel was not hired, at least in part, based on a phone conversation she had with Dr. Thompson (president of Enterprise-Ozark Community College), one of Emanuel's past employers. (Young depo., p. 140, lines 2-6). Emanuel first argues that this phone call is "not due to be credited" because GCWCC has not established that this conversation took place prior to Dr. Young's decision to hire Ms. Ware. This assertion is not reflective of Dr. Young's extensive deposition testimony on the subject. During her deposition, Dr. Young repeatedly testified that the telephone conversation between herself and Dr. Thompson occurred before the hiring decision was made.

When Dr. Young was asked by plaintiff's counsel why she did not call any of the employment references for Dr. Emanuel during the application review process, Dr. Young stated it was because she had received a phone call about Dr. Emanuel.

3

> Q: Did you call anybody about Dr. Emanuel?
> A: No.
> Q: Why not?
> A: I got a call about Dr. Emanuel.
> Q: That's not, that's not my question. Why didn't you call anybody about him?
> A: Because I got a call about him and didn't need to call anybody else.

(Young Depo., p. 64, line 23-p. 65, line 8). Obviously, this testimony demonstrates that the phone call between Dr. Young and Dr. Thompson occurred during the applicant assessment process and prior to an employment decision having been made.

Again, on page 82 of her deposition, Dr. Young was questioned about when she received the phone call from Dr. Thompson.

> Q: . . . Do I take this to mean that you had made your decision and extended an offer by July 12th?
> A: Apparently.
> Q: Okay. Did you receive this phone call, do you recall, if you received the phone call before July 12th?
> A: I would have, I received it before I made the decision.

(Young Depo., p. 82, lines 8-16).

Again, on page 158 of Dr. Young's deposition, she testified as follows:

> Q: Okay. And you're certain that that phone call took place before you made the hiring decision?
> A: Yes.

(Young Depo., p. 158, lines 18-23).

On page 84 of her deposition, Dr. Young testified:

> Q: . . . When you got the phone call . . . from Dr. Thompson, had you already met with Dean Fergus and the others.
> A: No.
> Q: Okay. So it was some time after the interviews and before you met with them; is that right?

4

> **Mr. Christman:    If you recall.  Don't guess.**
> **A:    I really don't recall on the phone call.  It was sometime *during the application/interview process*, but I do not recall at what point the call came in.**

(Young Depo., p. 131, lines 6-21) (emphasis added).

Again, on page 133 of her deposition, Dr. Young reaffirmed that the phone conversation took place before the employment decision, "Well, I would have had the conversation before I met with Fergus because at that point is when we made a decision as to who we wanted to go with." (Young Depo., p. 133, lines 3-6).

Plaintiff makes the incredulous statement that "Young's final testimony at deposition on the subject was that she could not remember when it occurred." (Plaintiff's response, p. 13-14).  This mischaracterization of Young's testimony should be given no weight.  After reaffirming no fewer than five times in her deposition that the phone conversation took place before the hiring decision was made, the final deposition testimony on the topic was as follows:

> **Q:    So [the phone call] may have been after you made the decision?**
> **A:    I don't think so.**
> **Q:    But you're not sure?**
> **A:    I'm not sure?**
>                              ***
> **Q:    And it's possible that you didn't have the conversation before the decision was made, right?**
> **A:    I believe the conversation was before the decision was made.**
> **Q:    But you don't know for sure?**
> **A:    I don't know for sure.**

(Young Depo., p. 189 line 18--p. 190 line 11).

Following her deposition, Young again reaffirmed in her affidavit that the phone call happened before the hiring decision.  Although Dr. Young could not be certain of the

5

exact date of the phone call, contrary to the plaintiff's assertion, she repeatedly testified that she believed the call took place prior to the hiring decision and was an important part of the decision. (Young Aff., p. 2) (See also Young Depo., p. 161, line 15) ("The phone call did mean a lot to me.")

The plaintiff has offered no evidence that this conversation did not take place or that the veracity of this legitimate, non-discriminatory reason is in any way questionable. Both Dr. Young's testimony in her deposition and in her affidavit clearly establishes that she received a warning from Dr. Thompson about employing Dr. Emanuel prior to her making the final decision. The plaintiff has failed to offer any evidence of pretext concerning this legitimate, non-discriminatory reason. Dr. Young's affidavit and deposition testimony are entirely consistent as to the timing of the phone call.

Further, in rebuttal to plaintiff's assertion that the timing of the conversation between Thompson and Young is somehow unclear, defendant GCWCC hereby submits the supplemental affidavit of Stafford Thompson as Exhibit 36. In this supplemental affidavit, offered by GCWCC as rebuttal evidence in support of defendant's Motion for Summary Judgment, Thompson testifies, "Based upon Dr. Young's comments to me and our conversation, it was clear to me that Dr. Young had not yet made a decision regarding the position for which Dr. Emanuel had applied. Although I cannot recall specifically when the conversation took place, I am certain that Dr. Young had not yet made an employment decision at the time of our conversation." (Thompson Supplemental Aff.). Although this defendant contends that Dr. Young's testimony about having received a phone call from Dr. Thompson prior to making an employment decision is undisputed,

6

Dr. Thompson's affidavit serves to further corroborate that testimony. Therefore, plaintiff's first argument of pretext regarding the timing of the phone conversation must fail.

Plaintiff next argues that GCWCC's reliance on the phone conversation between Young and Thompson is a pretext for discrimination because Dr. Young failed to mention this conversation in the "Statement to the Search File" or the response to the EEOC charge. In advancing this argument, Emanuel relies upon four cases from the Eleventh Circuit: *Cleveland v. Home Shopping Network*, 369 F.3d 1189 (11th Cir. 2004); *Hinson v. Clinch Cty. Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999); and *Bechtel Construction Co. v. Sec. of Labor*, 50 F.3d 926 (11th Cir. 1995). Plaintiff's reliance on these cases is misplaced.

All of the cases cited above are inapposite to the case at bar, as they all speak to circumstances where the employer has either changed or "shifted" the reason for their employment decision or the plaintiff has affirmatively produced evidence attacking the veracity or truthfulness of the legitimate, non-discriminatory reason asserted by the employer. For instance, in *Cleveland v. Home Shopping Network*, the Court of Appeals held that the district court had actually misapplied the summary judgment standard by viewing the facts in the light most favorable to the *moving* party. *Cleveland*, 369 F.3d at 1194. This misapplication of the standard contributed heavily to the central holding of the case. The Court further stated that the employer's proffered reason for having terminated the employee shifted from one basis to another. The employer, HSN, argued

that it terminated the employee because the employee had participated in an infomercial. When pressed on the reason why infomercials were prohibited, the employer shifted its reason from a contract, to a non-compete agreement, to an unwritten policy, to a standard industry practice. In other words, the employer changed the basis for its employment decision from one reason to another.

That is clearly not the case with GCWCC. The plaintiff offers no evidence (as none exists) that Dr. Young has shifted or changed the reason for her employment decision. In both the Statement to the Search File and the response to the EEOC, Dr. Young stated that Ms. Ware was hired because she was the best fit for the institution for a number of separate and specifically articulated reasons. In response to this lawsuit, Dr. Young continues to assert as a legitimate, non-discriminatory reason for her employment decision that Ms. Ware is the best fit for GCWCC for the same specifically articulated reasons as set forth in the Statement to the Search File and in response to the EEOC charge. That basis for her employment decision has neither shifted nor changed.

However, in addition to that legitimate, non-discriminatory reason for the employment decision, Dr. Young has stated in response to this lawsuit that she received a warning phone call from a colleague (Thompson) and that Emanuel's salary would have been much higher than Ms. Ware's. Although Young has advanced additional legitimate, non-discriminatory reasons for her decision in response to this federal lawsuit, she has not shifted reasons. Since this case does not involve shifting or changing articulated reasons for the employment decision, *Cleveland* has no application.

The next case cited by Emanuel is *Hinson v. Clinch County. Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000). Emanuel asserts *Hinson* for the proposition that reasons given by an employer are in fact pretextual when the employer first raised complaints of the plaintiff's job performance in the EEOC complaint. However, what the plaintiff fails to mention is that *Hinson* was not a failure to hire case but a discriminatory demotion case. That context is important associated with the Court's holding on pretext in that the employer's proffered legitimate, non-discriminatory reasons for the employee's transfer (demotion) were based on various work performance complaints. The employee argued that the employer never raised any of those complaints during the employment relationship and that the complaints were raised for the first time in response to the EEOC charge. Obviously, if the employer has serious complaints about the job performance of its employee, one would expect those complaints to have been raised in the context of that employment relationship and not raised for the first time in response to an EEOC charge. Moreover, the employee in *Hinson* actually offered evidence attacking the veracity of the proffered reasons and the basis of the complaints.

In the present case, there was no previous employment relationship between Dr. Emanuel and GCWCC. Therefore, the context for asserting complaints about employee performance is not analogous. More importantly, Emanuel has offered absolutely no evidence attacking the veracity of Dr. Young's testimony or the testimony of Dr. Thompson concerning their conversation about Emanuel. Furthermore, plaintiff has offered no independent evidence that Young's asserted reasons are false or that there existed some employment relationship between Emanuel and Young that would have

9

required that Young disclose the phone call prior to the litigation. Accordingly, *Hinson* has no application here.

The *Bechtel* case, as with the other cases cited by plaintiff, involves an employee actually attacking the veracity of the employer's asserted legitimate, non-discriminatory reasons. The employee offered affirmative evidence that the employer's reason for terminating the employee (the employee's performance was too slow because of an arthritic condition) was false because the employer had previously, on the record, indicated that these issues were not factors in the termination. In other words, the employee offered affirmative evidence that the employer had shifted or changed the articulated reason for the employment decision. Again, GCWCC has never changed or abandoned its articulated reason for hiring Ms. Ware over Dr. Emanuel. Rather, GCWCC has simply articulated additional legitimate, non-discriminatory reasons for the decision.

Finally, the *Damon* case involved an instance where the employee established by circumstantial evidence discriminatory animus on the part of the employer. The employee pointed out specific remarks made by the employer from which a jury could infer discriminatory animus. The Court held that the employer's comments arguably suggested a discriminatory preference and was a significant piece of circumstantial evidence in proving pretext. Against this backdrop, the employee argued that the employer's reasons for the termination were a pretext where they were based upon a "work rule" defense. The Court noted that a written work rule defense is arguably pretextual when a plaintiff submits evidence that the employee actually did not violate a

10

work rule or that the employee did violate the work rule, but other employees outside the protected class who were engaged in similar acts were not similarly treated. The Court determined in *Damon* that the employee had established evidence that employees outside the protected class who had conducted themselves in the same way as the employee in question were not treated similarly. Therefore, the plaintiff employee successfully established pretext.

None of the facts from *Damon* exist in the case at bar. There is absolutely no evidence (circumstantial or otherwise) that Dr. Young held any discriminatory animus toward Emanuel. The plaintiff has offered no evidence of derogatory comments or remarks. Likewise, the employment decision at issue in the present case did not involve a work rule violation as in *Damon*. Therefore, *Damon* has absolutely no application here.

It must be noted here that the Court need not assume or speculate as to why Dr. Young did not mention the telephone call with Dr. Thompson in her Statement to the Search File or in response to the EEOC charge. Dr. Young offered direct testimony on the record as to the reasons for these omissions.

When questioned about why she did not discuss the phone call in the Statement to the Search File, Dr. Young testified as follows:

> **Q:** **You don't mention anything in there about the phone call from Dr. Thompson, do you?**
> **A:** **No.**
>
> ***
>
> **Q:** **Okay. And that phone conversation was an important part of your decision, I think you said; is that right?**
> **A:** **It was a part of it, yes.**

11

> **Q:   Yeah. But why didn't you include it then?**
> **A:   Because I didn't want to put that down if I listed the reason I employed her, but I did not want to list that I did not refer, I don't ever refer to the other candidates in my listing, I do not make comparisons in my listing, in any listing. You will never look at a listing or a statement in which I make comparisons to other candidates.**

(Young Depo., p. 178, lines 17-20; p. 181, lines 5-19).

Later, Dr. Young testified "I don't ever refer to other candidates in my statement. I just discuss their strengths." (Young Depo., p. 182, lines 2-4). Dr. Young clearly explained why she did not include the warning she received from Dr. Thompson about Dr. Emanuel in the Statement to the Search File. The absurdity of the plaintiff's argument, that Dr. Young should have included such a negative reference about an applicant in the "Statement to the Search File," is self evident. No college president would highlight the negative attributes of the unsuccessful applicants in the "Statement to the Search File." This would require the president to unnecessarily list critical, even insulting, reasons for not choosing a particular applicant. What if an applicant was poorly dressed, or had poor personal hygiene, or had made an embarrassingly inappropriate remark in the interview, or had a humiliating criminal conviction? Plaintiff's argument would require a president, such as Dr. Young, to parade all of the weaknesses of all unsuccessful candidates in the Statement to the Search File or risk exposing herself to liability in a discrimination lawsuit. Title VII has never required this of an employer in any context. Moreover, such a practice would be onerous and unduly burdensome.

As stated by Dr. Young on page 180 of her deposition, the Statement to the Search File was a requirement under the Shuford Decree. (Young Depo., p. 180, lines 15-22). There would obviously be no legitimate purpose in highlighting all of the reasons one candidate was selected over another in the Statement to the Search File, particularly where some of those reasons reflect negatively on a candidate that was not chosen. Instead, Dr. Young pointed out the strengths of the candidate who was chosen, thereby justifying the hiring decision. Dr. Young's explanation for why she did not include her conversation with Dr. Thompson in the Statement to the Search File is reasonable and legitimate. There is, therefore, no evidence of pretext in this regard.

Similarly, Dr. Young explained why she did not include the telephone call with Dr. Thompson in her response to the EEOC charge. Dr. Young explained that she did not mention her telephone conversation in her response to the EEOC charge because she did not know the nature of the problem between Dr. Thompson and Dr. Emanuel. (Young Depo., p. 193, line 23-p. 194, line 15). Because of her lack of knowledge of the specific circumstances of the problem between Dr. Emanuel and Dr. Thompson, Dr. Young elected not to mention the phone call in her response to the EEOC charge. She stated that she did not want to speculate about the details of something she did not know. (Young Depo., p. 197, lines 16-17). Dr. Young did explain to the EEOC that she selected a perfectly well-qualified candidate who met the needs of the college. (See Young Depo., Ex. 17). That reason has never shifted or changed.

Dr. Young maintains to this day that Ms. Ware was selected because she was the most suitable candidate for the position. Her explanation for not including the phone

13

conversation in the response to the EEOC charge was reasonable and legitimate. There is absolutely no evidence that this phone call did not take place just as Dr. Young testified. As a result, there is no evidence of pretext.

> **B.     GCWCC did not hire Emanuel, in part, because Emanuel's salary would have cost the college $33,000 per year more than Ms. Ware.**

The plaintiff has failed to produce any evidence that the cost-saving reason articulated by GCWCC was merely pretextual. In the plaintiff's brief in opposition to summary judgment, Emanuel seemingly supports this contention with the same logic that he used to support the previous argument.[3] Emanuel alleges that GCWCC did not have a legitimate, non-discriminatory explanation for not mentioning Emanuel's higher salary requirements in either the "Statement to Search File" or the response to the EEOC.

As mentioned above, Young has no obligation to mention every reason that Emanuel was not hired in the Statement to the Search File. Plaintiff's argument in this regard fails for the same reasons as stated above.

Concerning GCWCC's response to the EEOC charge, Young testified that she believed her response to the EEOC accurately and adequately addressed Emanuel's claim of race and gender discrimination. (Young Depo., p. 198, lines 14-19). She said she simply did not think about referring to the salary discrepancy at that point, although it was an important factor in the hiring decision. (Young Depo., p. 198-199, lines 199-200). In hind sight, Dr. Young believes that she must have failed to tell her then attorney

---

[3] The initial sentence of this argument heading in the plaintiff's brief is, "The same argument goes for this assertion." (Pl. Br. Opp. S.J. 15).

about the cost-saving factor when the EEOC response was being prepared. (Young Depo., p. 199, lines 19-23). In other words, the omission of the cost saving factor from the EEOC was a simple oversight.

That said, the plaintiff has offered absolutely no evidence (because none exists) challenging the truthfulness of the cost savings to the college in hiring Ware instead of Emanuel. In other words, the plaintiff has neither proven nor argued that it would *not* have saved GCWCC $33,000 per year to employ Ware instead of Emanuel. In the cases cited by the plaintiff on the issue of pretext, the employees did offer such evidence and proved that the employer's articulated reasons were either false or bogus. Here, Dr. Young's cost saving reason for hiring Ware instead of Emanuel is legitimate, and there is no evidence of pretext.

The plaintiff further contends that Dr. Young's alleged failure to abide by the Southern Association of Colleges and Schools ("SACS") Faculty Credential guidelines is also evidence of pretext. However, this assertion is unfounded and not suggestive of pretext. As Dr. Young testified in deposition, the SACS guidelines "[have] nothing to do with the ***hiring process***." (Young depo., p. 107, lines 3-5) (emphasis added). SACS guideline 3.7.1 explains what SACS looks for when they visit a school for accreditation purposes. As Dr. Young explained, SACS will look at the highest degree earned by an individual in order to ensure that the faculty member is qualified to hold that position. (Young depo., p. 108, lines 14-19). There is no requirement that GCWCC always hire the applicant with the highest degree earned in any position. (Young depo., p. 108, line 9-12). Young's testimony concerning the meaning of the SACS guidelines is undisputed.

The plaintiff has produced no evidence to suggest that Dr. Young's understanding of the SACS guidelines is incorrect. In the absence of such evidence, the assertion that Dr. Young blatantly disregarded SACS policy in regard to hiring Ms. Ware is unsupported by the evidence, and is not suggestive of pretext.

> **C.    GCWCC's explanation that Ms. Ware was a better fit for GCWCC is a legitimate, non-discriminatory reason for hiring Ware instead of Emanuel, and Emanuel has not provided any evidence to support a conclusion that this reason is merely pretextual**.

Emanuel argues that it is preposterous, fallacious, defiant of logic, spurious on its face, and downright specious to conclude that Ms. Ware was a better fit for GCWCC than Emanuel. (Pl. Br. Opp. S.J. 15-16). While Emanuel has characterized GCWCC's hiring decision using colorful language and opprobrious verbiage, the language is nothing more than an attack on the wisdom of the business decision by GCWCC to hire Ware. It is well established in the Eleventh Circuit that a plaintiff *does not* prove that an employer's proffered reason is pretextual "merely by questioning the wisdom of the employer's reason," especially where the reason is one that might motivate a reasonable employer. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (emphasis added). Emanuel has produced no evidence that Dr. Young's conclusion that Ms. Ware was simply a better fit for the job is unreasonable.

Disparities in qualifications can only be used to show pretext if the disparities are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id*. (quoting *Lee v. GTE Florida, Inc*., 226 F.3d 1249, 1254 (11th Cir. 2000)).

Dr. Young explained why Emanuel's qualifications, while impressive, were not the best fit for the job in question:

> When filling positions at GCWCC, I take into account the entire picture of suitability of a particular candidate for a particular job. There is no one qualification or set of qualifications that necessarily dictates my decision. While certain candidates may have higher qualifications in terms of education or experience than others, sometimes those candidates are not the best suited for the particular position for other reasons.
>
> ***
>
> . . . There were a number of reasons that Ms. Ware was selected over Dr. Emanuel, none of which had anything to do with his race or gender. I was generally more impressed with Ms. Ware's performance in the telephone interview in that she seemed to be the most enthusiastic and appropriate candidate for the job. Her experience as a community college student as well as her recent experience in teaching part time at a community college indicated to me that she would identify well with the student body at the Sparks campus. The position available at GCWCC was a teaching position at the Eufaula-Sparks campus. This is a smaller and more rural campus where a strong connection and identification with the students would greatly increase the effectiveness of the instructor. Dr. Emanuel, while having a Ph.D and extensive experience in the four year and two year college setting, as well as having numerous publications, did not seem to be as good a fit as Ms. Ware in this particular setting. The position did not call for a Ph.D or publication experience.

(Young Aff., p. 2).

It is certainly not unreasonable for Dr. Young to conclude that Emanuel was simply over-qualified or a bad fit for the job available at a small, rural campus. Emanuel must do more than merely trumpet his Ph.D. and publication record to prove pretext. He must show that there was a disparity in qualifications so great that *no reasonable person* would have hired Ms. Ware. Colorful adjectives and inflammatory rhetoric are not evidence of pretext. Therefore, GCWCC is entitled to summary judgment.

### D. Emanuel has failed to offer any evidence that GCWCC's employment decision was motivated by "discriminatory animus."

The plaintiff has failed to show that any of GCWCC's proffered reasons are pretextual, and accordingly, the plaintiff has failed to show that GCWCC's decision to hire Ms. Ware was motivated by unlawful discriminatory animus. The "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1984). The plaintiff argues that he was not hired because he is a white male. However, the plaintiff has failed to offer any evidence, either direct or circumstantial, that would support this contention. Plaintiff only argues that he had more extensive teaching experience and higher educational attainment than Ms. Ware. Other than the alleged disparity in qualifications, there is no evidence of discrimination here. Having failed to produce any evidence of discriminatory intent, the "sole concern" of his case, the plaintiff has failed to carry his burden, and GCWCC is entitled to summary judgment.

### Conclusion

GCWCC is entitled to summary judgment on Emanuel's remaining claim of disparate treatment, and this Court should grant summary judgment in favor GCWCC for the foregoing reasons. GCWCC has offered several legitimate, non-discriminatory reasons for not hiring Emanuel: (1) Dr. Young received a troubling telephone call from Dr. Thompson about Emanuel, (2) Emanuel's salary would have cost the community college approximately $33,000 more per year than Ms. Ware, and (3) Dr. Young believed that Ms. Ware was simply a better fit for the community college.

Faced with these legitimate, non-discriminatory reasons for the hiring decision, the burden was on Emanuel to produce evidence that the reasons were not legitimate, but merely pretextual. Emanuel has failed to do so. Therefore, summary judgment is proper for GCWCC.

                             Respectfully submitted,

                             s/Andrew W. Christman (CHR024)
                             Attorney for Defendant
                             George C. Wallace Community College

OF COUNSEL:
Gidiere, Hinton, Herndon & Christman
P. O. Box 4190
Montgomery, AL 36103
Telephone: (334) 834-9950
Facsimile: (334) 834-1054

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Adam M. Porter
2301 Morris Avenue, Ste. 102
Birmingham, AL 35203

                             s/Andrew W. Christman (CHR024)

# AFFIDAVIT

Before me, the undersigned notary public, in and for said county and state, personally appeared Stafford L. Thompson, who upon being duly sworn on oath deposed and said as follows:

    My name is Stafford L. Thompson, and I was the President of Enterprise-Ozark Community College until June 30, 2008, when I retired. I had served as the President of the College for 14 years. This affidavit is based upon my own personal knowledge and is a supplement to the affidavit that I executed on or about April 1, 2008.

    The conversation to which I referred in my affidavit of April 1, 2008 between myself and Dr. Linda Young regarding her possible employment of Dr. Richard Emanuel took place prior to her having made an employment decision. Based upon Dr. Young's comments to me and our conversation, it was clear to me that Dr. Young had not yet made a decision regarding the position for which Dr. Emanuel had applied. Although I cannot recall specifically when the conversation took place, I am certain that Dr. Young had not yet made an employment decision at the time of our conversation.

_____
Stafford L. Thompson

STATE OF ALABAMA      )
                                      )
COUNTY OF COFFEE      )

    I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that <u>Stafford L. Thompson,</u> whose name is signed to the foregoing document and who is known to me, acknowledged before me on this day that being informed of the contents of the foregoing document, has signed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this 12th day of August, 2008.

_____
Notary Public

Exhibit 36